**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| PHILIP B. INMAN, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff ) ) | COLLECTIVE ACTION COMPLAINT PURSUANT TO 29 USC § 216(b) |
| vs. ) ) | CASE NO. 1:22-cv-1639 |
| THE TAP BTOWN, INC. and NATHAN FINNEY ) ) ) | |
| Defendants ) | |

**PLAINTIFF'S COMBINED RULE 23 CLASS ACTION AND FLSA COLLECTIVE ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES**

### I. STATEMENT OF THE CASE

Plaintiff Philip B. Inman ("Inman") brings this FLSA collective action and individual lawsuit against Defendants The Tap Btown, Inc. and Nathan Finney (hereinafter collectively "Restaurant Employer") to address class-wide wage and hour violations, particularly violations of the FLSA's tip credit and tip pooling rules, committed by Restaurant Employer against its hourly-paid, tipped employees who work or worked at its Bloomington, Indiana restaurant called The Tap. Defendant Nathan Finney owns and operates The Tap and he is the individual FLSA "employer" responsible for the tip credit and tip pooling violations. Inman is pursuing Restaurant Employer in a collective action under the Fair Labor Standards Act ("FLSA") to recover unpaid wages and unpaid minimum wages and damages. Similarly, Inman brings Rule 23(b)(3) class-wide and individual claims to recover improperly deducted and/or converted tips paid to servers, but taken by employer to pay its own expenses (including wages to non-tipped employees). Those class claims arise under the Indiana Wage Payment Statute and the Indiana Crime Victim's Statute.

### II. FACTUAL ALLEGATIONS

1. Inman currently resides in Bloomington, Monroe County, Indiana.

2. Based upon information and belief, the "Restaurant Employer" is a bar and restaurant owned and operated by Defendant Nathan Finney and incorporated as The Tap Btown, Inc.

3. Inman is a current employee of Restaurant Employer. He was originally hired in approximately March 2019 an hourly paid bar back and security position, but was transferred to an hourly paid management position in April 2019. Inman switched back to hourly paid and tipped work on or about August 12, 2019 and has served as such since that time. Since August 12, 2019, Inman has worked as a server, as security and in a bar back/expo position. In all three positions - server, security and bar back/expo - Inman was paid less than the $7.25 per hour minimum wage for his hourly wages and was provided tips. In the server position, Inman was paid $2.13 per hour plus tips. In the security and the bar back/expo positions, Inman was paid $5.00 per hour plus tips for periods of time covered by this lawsuit.

4. At all times from August 12, 2019 to the present, Inman was paid wages on an hourly basis and he was treated as a non-exempt employee. In the same way, Restaurant Employer paid all of its server, security (for at least part of the time covered by this lawsuit) and bar back/expo employees on an hourly basis and treated them as non-exempt. As described above, servers, security and bar back/expo employees were paid at hourly rates that are less than the FLSA minimum wage of $7.25 per hour.

5. Inman and all of Restaurant Employer's server employees were promised payment of tips by customers as a significant part of their wages. The tips were to be in addition to the hourly wages Restaurant Employer paid its servers.

6. At all times relevant to this lawsuit (including all times in the last three years' time), Restaurant Employer required Inman and all other servers to contribute to and participate in an invalid tip-sharing pool. Inman will further describe this invalid tip pooling arrangement in the paragraphs below.

7. Restaurant Employer failed to properly inform Inman and its other tipped

employees of the tip credit provisions of the FLSA, in violation of 29 USC § 203(m). See 29 C.F.R. § 531.54.

        8.      Restaurant Employer required Inman and all fellow servers to participate in an invalid tip sharing pool. The tip sharing pool Restaurant Employer required Inman to participate in was invalid because some of Inman and other servers' tips were used by the employer to cover its own expenses, particularly payment of wages to employees not eligible to participate in the tip pool. Examples of Restaurant Employer's use of tip pool funds for improper reasons include, but are not limited to, the following:

    a.    Restaurant Employer was paying employees who were not ordinarily or customarily paid tips by customers at sub-minimum wage rates of pay (less than $7.25 per hour). This includes security employees and bar back/expo employees who were paid at hourly rates of $5.00 per hour.

    b.    Based upon information and belief, Restaurant Employer used server's pooled tips to cover cash register shortages.

    c.    Restaurant Employer used Inman and other servers' pooled tips to pay its security guards and bar back/expo employees. Such employees are non-tipped employees who performed non-tipped functions, such as security services and cleaning or clearing dishes and trash in the facility and/or washing glasses and dishes.

    d.    For much of the time covered by this lawsuit, Restaurant Employer also used Inman and other servers' pooled tips to pay cooks and other non-tipped employees not mentioned in the paragraph above.

    e.    Restaurant Employer's tip pool was mandatory. Servers could not voluntarily choose whether or not he/she wished to participate in the tip pool. Additionally, the tip sharing was controlled and administered by the Restaurant Employer.

    f.    Restaurant Employer was taking the tip credit for many employees (e.g., servers, bar back/expo employees, security employees), but was allowing employees who

are not tipped to participate in the tip pool.

All of the described misuse of the funds in the tip sharing pool cause the tip pool to be invalid and cause Restaurant Employer to lose the FLSA's tip credit.

9. To provide further explanation, the FLSA has a tip credit provision which permits employers of tipped employees to pay those employees at less than the FLSA-required minimum hourly wage and take a tip credit against its minimum wage obligations. However, an employer is not permitted to take any tip credit against its minimum wage obligation in any of the following circumstances: 1) when the employer requires its tipped employees to return a portion of their tips to the employer, 2) when the employer requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped work, and 3) when the employer requires its tipped employees to perform non-tipped work that, although related to the tipped work, exceeds twenty percent of the employees' time worked during a workweek. See *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 307 (N.D. Ill. 2010); *Bernal v. Vankar Enterprises, Inc.*, 579 F.Supp.2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take tip credit when it used plaintiffs' tips to pay for cash shortages.) Examples of non-tipped work (that should be paid at a full minimum wage in any circumstance) includes time servers work when the restaurant is closed in the mornings (work opening the restaurant) and time closing the restaurant at the end of the work day.

10. For most of the period of time from August 12, 2019 to the present, Restaurant Employer has been paying Inman, other servers, security guards and bar back/expo[1] employees a sub-minimum wage AND has been operating an invalid tip pool. Restaurant Employer has committed FLSA minimum wage violations against Inman, every server and every other employee paid an hourly wage less than $7.25 per hour.

11. Inman has actually complained to Restaurant Employer's management regarding

---

[1] Restaurant Employer may have very recently increased hourly wages for security, bar backs and other non-tipped employees in Summer 2022, but many, many violations occurred within the last 3 years.

Restaurant Employer's egregious tip credit and tip pooling violations. He has made clear to Restaurant Employer that the Restaurant Employer's tip credit and tip pooling policies and practices violate the law.

12. Inman is specifically alleging that Restaurant Employer has taken illegal deductions from his tip wages as a server in violation of the Indiana Wage Assignment Statute, I.C. 22-2-6-2, and in so doing, Restaurant Employer has failed and refused to pay Inman his wages in full in each and every week Restaurant Employer took such deductions from Inman's wages earned as a server.

13. Restaurant Employer has no legal authority to take portions of the servers' tips or to otherwise dock the wages of the servers to cover Restaurant Employer's own business, including payment of wages to non-tipped employees, nor did Restaurant Employer have signed, written authority from Inman or any other server which complies with I.C. 22-2-6-2 and would allow Restaurant Employer to take a portion of the servers' wages to cover such business costs.

14. Similarly, Inman is specifically alleging that Restaurant Employer knowingly and intentionally exerted unauthorized control over Inman and all server employees' pooled tips, credit card and debit card paid tips, which were specific dollar amounts entrusted by customers to Restaurant Employer and special chattel intended for the dedicated purposes of paying server employees tips for their services. Stated differently, the pooled cash, credit card and debit card paid tips were entrusted by customers to Restaurant Employer to apply to a special purpose, payment of tips to server employees for their service. Rather than pay all of those pooled tips, credit card and debit card paid tips to its server employees, Restaurant Employer wrongfully took possession and kept cash and credit and debit card paid tips for itself and for Restaurant Employer's own unauthorized and wrongful purposes (including payment of its wage obligations to non-tipped employees). Moreover, Restaurant Employer wrongfully and illegally enriched itself, for its benefit and to its server employees' harm, by retaining pooled tips, credit and debit card paid tips that were specifically collected for the intended purpose of paying tips to server

employees.

15. Restaurant Employer is wrongfully misappropriating pooled tips, credit card and debit card paid tips intended for its server employees in each and every work week.

16. Restaurant Employer has intentionally, knowingly, and with reckless disregard violated Inman and all server employees' rights to tips paid by customers with cash, credit cards and debit cards. Inman is expressly alleging that Restaurant Employer has acted in bad faith in violating its server employees' rights under the FLSA and the Indiana Crime Victims Relief Act.

17. Restaurant Employer has intentionally, knowingly, with reckless disregard violated Inman, other servers, security guards and bar back/expo employees' rights to earned wages, including earned full minimum wages, through Restaurant Employer's illegal use of servers' tips and through Restaurant Employer's failure to pay a full minimum wage to Inman, all servers, all security guards and all bar back/expo employees.

18. By way of this Complaint, Inman seeks all wages, all minimum wages, and any overtime compensation, along with all statutory liquidated damages, owed to him and owed to all other victims of Restaurant Employer's FLSA, Indiana Wage Payment Statute, and Indiana Crime Victims Statute violations. each.  Additionally, Inman seeks payment of all of his reasonable attorney's fees, costs and expenses.

### III.  COLLECTIVE ACTION ALLEGATIONS

19. Inman incorporates herein by reference paragraphs 1 - 18 above.

20. This Complaint is brought as a collective action on behalf of other current and former employees of Restaurant Employer who were similarly denied payment of a full minimum wage and/or who were denied payment of tips in full as the result of an invalid tip pool. This collective action protects all such servers, security guards, bar back/expo employees and other tipped employees who work or have worked for Restaurant Employer at The Tap in Bloomington, Indiana at any time from three years prior to the filing of this Complaint to the present.

21. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Inman and all of Restaurant Employer's current and former servers, security guards, bar back expo employees and other employees who participated in Restaurant Employer's invalid tip pool and/or were paid an hourly rate of less than $7.25 per hour. By virtue of the "collective action," Inman represents the identical and/or similar interests of former and current hourly-paid servers, security guards, bar back/expo employees and other employees who were deprived and not paid all tips and/or were not paid at least an amount equal to $7.25 for every hour worked. Inman anticipates that other Restaurant Employer server employees will opt in to the action.

22. Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

23. Inman's claims are typical of the claims of the whole collective group of current and former hourly-paid servers, security guards, bar back/expo employees and other employees paid at less than full minimum wages ($7.25 per hour) and/or harmed by Restaurant Employer's unlawful taking and retention of pooled tips, credit card and debit card paid tips.

24. Inman will act to fairly and adequately protect the interests of the entire collective group of current and former employees of Restaurant Employer.

25. A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

26. A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and

uniformity of decisions will be assured.

## IV. CLASS ACTION ALLEGATIONS

27. Inman incorporates herein by reference paragraphs 1 - 26 above.

28. This Complaint is brought as a class action on behalf of other current and former server employees of Restaurant Employer who were similarly denied payment of pooled tips, credit card and debit card paid tips under Restaurant Employer's scheme.

29. With respect to Rule 23(b)(3) class action claims, Inman will serve as class representative over the following class:

> Inman will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute (incorporating claims for wages deducted in violation of the provisions of the Indiana Wage Assignment Statute) and under the Indiana Crime Victims Relief Act based upon conversion and/or theft. This action is filed as a class action pursuant to Rule 23 of the Indiana Rules of Trial Procedure on behalf of Inman and on behalf of all eligible current and former server employees of the Restaurant Employer who were damaged by Restaurant Employer's pooled tip, credit card and debit card paid tip confiscation scheme. By virtue of the class action, Inman represents the identical and/or similar interests of former and current server employees of Restaurant Employer were denied pooled tips, credit card and debit card paid tips under the same circumstance.

30. Particularly with employee turnover, the number of Restaurant Employer's current and former server employees who will be members of this class action is so great (numerosity) that joinder of all members is impractical. Instead, Inman will pursue discovery to obtain the names of the other current and former server employees, to provide notice of the class action and to offer the opt out opportunity.

31. Particularly with the type of wage deduction and/or conversion/theft claims and practices at issue in this case, there are questions of law and fact that are common to the entire class.

32. Inman's claims are typical of the claims of the whole group of current and former server employees harmed by Restaurant Employer's unlawful wage deductions and/or illegal conversion/theft of pooled tips, credit card and debit card paid tips entrusted to it by customers for intended for payment to server employees.

33. Inman will act to fairly and adequately protect the interests of the entire class of current and former server employees of Restaurant Employer.

34. A class action is superior to other available means for the fair and efficient prosecution of these wage deduction and/or conversion/theft claims against Restaurant Employer. For example, to prove Restaurant Employer's illegal practices, Inman and other members of this class would seek in discovery records about all similarly situated current and former server employees who were subjected to the same or similar tip confiscation scheme. Individual lawsuits by the members of the class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

35. A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of Indiana statutory violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their tips under Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

36. A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### V. JURISDICTION AND VENUE

37. This Court has jurisdiction over the subject matter of this Complaint under 28 USC § 1331, 28 USC § 1343, and 29 USC § 201 et seq. as Plaintiff's FLSA claims raise federal questions of law. This Court has supplemental jurisdiction over Plaintiff's related claims

under the Indiana Wage Payment Statute and the Indiana Crime Victims Relief Statute, which are based upon common sets of facts.

38. Venue is proper in this Court pursuant to 28 USC § 1391 because the unlawful conduct alleged herein was committed in the Southern District of Indiana.

## VI. STATEMENT OF CLAIMS

### A. Claims Under the Fair Labor Standards Act

39. Inman incorporates herein by reference paragraphs 1 - 38 above.

40. Individually and jointly, each Defendant - Restaurant Employer - is a covered employer subject to the provisions of the Fair Labor Standards Act. Each Defendant, individually and/or jointly, is an "enterprise." See 29 USC § 203(s)(1). Further, each Defendant is an "employer" as that term is defined under the FLSA at 29 USC § 203(d). Finally, each Defendant is a "person" as that term is defined under the FLSA. 29 USC § 215.

41. Inman is expressly alleging that Defendant Nathan Finney exercised operational control over Restaurant Employer, controlled all significant business functions of Restaurant Employer, and acted on behalf of and in the interest of Restaurant Employer in devising, directing, implementing, and supervising the wage and hour practices and policies challenged in this Complaint. Nathan Finney is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Nathan Finney is a "person" as that term is defined under the FLSA. Nathan Finney operates Restaurant Employer and is an "enterprise" as that term is defined under the FLSA. See 29 USC § 203(s)(1).

44. Defendants The Tap BTown, LLC and Nathan Finney constitute a "joint employer" as that term is defined under the FLSA. Defendant Nathan Finney operates The Tap BTown, LLC

45. Inman and all similarly situated server, security, bar back/expo and other participants in the tip pool are hourly paid, non-exempt employees entitled to the protections of the FLSA, including protections prohibiting employers from sharing or keeping any tips from a

tip pool and prohibitions against paying a sub-minimum wage to non-tipped employees. 29 USC § 203(m)(2)(B).

46. Inman and all servers, security guards, bar back/expo employees and other participants in the invalid tip pool were and are all hourly paid, non-exempt employees entitled to be paid a full minimum wage and, in weeks each worked in excess of forty hours, to overtime compensation.

47. By paying Inman and other similarly situated servers, security guards, bar back/expo employees and others at an hourly rate of pay less than the FLSA minimum wage of $7.25 per hour while also operating an improper tip sharing pool (and making improper use of the Plaintiffs' tips), Restaurant Employer has violated the minimum wage provisions of the FLSA and owes Inman and all others similarly situated the full minimum wage for each and every hour worked.

48. Restaurant Employer's failure to comply with the Fair Labor Standards Act's provisions regarding minimum wages and overtime compensation is willful and without justification.

49. Inman seeks for himself and all similarly situated current and former employees of Restaurant Employer all available damages, including all unpaid wages, minimum wages, unpaid overtime compensation itself, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which each may be entitled for Restaurant Employer's violations of the Fair Labor Standards Act.

50. Further, by taking pooled tips, credit card and debit card paid tips from its server employees, Restaurant Employer must pay damages to Inman and other opt in servers in an amount equal to the unlawfully taken pooled tips, credit card and debit card paid tips, plus an equal amount as liquidated damages.

51. Inman seeks for himself and all similarly situated server employees all available damages, including all illegally confiscated pooled tips, credit card and debit card paid tips,

liquidated damages, payment of reasonable attorneys' fees, costs and expenses, and any and all other damages to which each may be entitled for Restaurant Employer's violations of the Fair Labor Standards Act.

### B. Claim For Criminal Conversion Under Indiana Crime Victim's Relief Act

52. Inman incorporates herein by reference paragraphs 1 - 51 above.

53. As described hereinabove, Restaurant Employer, particularly acting by and through Defendant Nathan Finney and the management team of Restaurant Employer, committed individual and class-wide acts of criminal conversion, in violation of I.C. 35-43-4-3, each time it took a pooled tip, credit card or debit card paid tip from Inman or any other Plaintiff Class Member/server. Restaurant Employer knowingly and intentionally exerted unauthorized control over Plaintiffs' tips, which were specific dollar amounts and special chattel intended for the dedicated purposes of paying Plaintiffs a tip for service provided to a customer. Stated differently, the pooled tips, credit card and debit card paid tips were entrusted by customers to Restaurant Employer to apply to a special purpose, payment of tips to server employees. Rather than pay all pooled tips, credit card and debit card paid tips to server employees, Restaurant Employer wrongfully took possession and kept the tips for itself and for Restaurant Employer's own unauthorized and wrongful purposes, including payment of employer's own wages to non-tipped employees. Moreover, Restaurant Employer wrongfully and illegally enriched itself, for its benefit and to Plaintiffs' harm, by retaining tips that were specifically collected for the intended purpose of paying tips to server employees.

54. Restaurant Employer knowingly, intentionally and wrongfully retained for itself significant tips without Plaintiffs' authorization and to Plaintiffs' harm and detriment.

55. As a direct and proximate result of Restaurant Employer's repeated and class-wide acts of criminal conversion, Inman and all Plaintiff servers have suffered injuries and damages. All Plaintiffs subjected to one or more act of confiscation of a pooled tip, credit card

and debit card paid tip have been victims of criminal conversion and have suffered substantial, class-wide pecuniary losses.

56. As a direct and proximate result of Restaurant Employer's conversion of Inman's and Plaintiff Class Members' pooled tips, credit card and debit card paid tips, Plaintiffs are entitled to damages under the Indiana Crime Victim's Relief Act. On a class-wide basis, Plaintiffs are entitled to an amount equal to three times the sum of all pooled tips, credit card and debit card paid tips criminally converted by Restaurant Employer. Plaintiffs' attorneys' fees, costs and expenses, along with all travel expenses and direct and indirect expenses incurred by Plaintiffs related to any court proceedings, along with any and all other relief available to Plaintiffs under I.C. 34-24-3-1.

### C. Claim For Theft Under Indiana Crime Victim's Relief Act

57. Inman incorporates herein by reference paragraphs 1 - 56 above.

58. As described hereinabove, Restaurant Employer, particularly acting by and through Defendant Nathan Finney and the management team of Restaurant Employer, committed individual and class-wide acts of theft, in violation of I.C. 35-43-4-2, each time it took a pooled tip, credit card or debit card paid tip from Inman or any other Plaintiff Class Member/server. Restaurant Employer knowingly and intentionally exerted unauthorized control over Plaintiffs' tips, which were specific dollar amounts and special chattel intended for the dedicated purposes of paying Plaintiffs a tip for service provided to a customer. Stated differently, the pooled tips, credit card and debit card paid tips were entrusted by customers to Restaurant Employer to apply to a special purpose, payment of tips to server employees. Rather than pay all pooled tips, credit card and debit card paid tips to server employees, Restaurant Employer wrongfully took possession and kept the tips for itself and for Restaurant Employer's own unauthorized and wrongful purposes, including payment of employer's own wages to non-tipped employees. Moreover, Restaurant Employer wrongfully and illegally enriched itself, for its benefit and to

Plaintiffs' harm, by retaining tips that were specifically collected for the intended purpose of paying tips to server employees.

59. Restaurant Employer knowingly, intentionally and wrongfully retained for itself significant tips without Plaintiffs' authorization and to Plaintiffs' harm and detriment.

60. As a direct and proximate result of Restaurant Employer's repeated and class-wide acts of theft, Inman and all Plaintiff servers have suffered injuries and damages. All Plaintiffs subjected to one or more act of confiscation of a pooled tip, credit card and debit card paid tip have been victims of theft and have suffered substantial, class-wide pecuniary losses.

61. As a direct and proximate result of Restaurant Employer's theft of Inman's and Plaintiff Class Members' pooled tips, credit card and debit card paid tips, Plaintiffs are entitled to damages under the Indiana Crime Victim's Relief Act. On a class-wide basis, Plaintiffs are entitled to an amount equal to three times the sum of all pooled tips, credit card and debit card paid tips stolen by Restaurant Employer. Plaintiffs' attorneys' fees, costs and expenses, along with all travel expenses and direct and indirect expenses incurred by Plaintiffs related to any court proceedings, along with any and all other relief available to Plaintiffs under I.C. 34-24-3-1.

### D. Claims Under the Indiana Wage Payment Statute

62. Inman incorporates herein by reference paragraphs 1 - 61 above.

63. By way of this Complaint, Inman is seeking all available damages, including all unpaid wages, all underpaid wages, all illegally deducted tips and wages, damages for late payment of wages, and all available liquidated and/or treble damages, plus any and all attorney's fees, costs, and expenses, and any other damage to which he may be entitled pursuant to Indiana Law. Pursuant to the Indiana Wage Payment Statute, I.C. 22-2-5, Inman is seeking payment of unpaid wages and all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all of their attorney's fees, costs and expenses. This includes Inman and the server class's claims to recover illegally deducted tip wages (a violation of I.C. 22-2-6-2 and I.C. 22-2-5).

64. Restaurant Employer's failure to pay Inman his wages in full and on time constitutes bad faith action and certainly does not constitute a good faith attempt to comply with the Indiana Wage Payment Statute.

### VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiff Philip B. Inman, individually and on behalf of all similarly situated employees, respectfully requests that the Court enter judgment in the Plaintiff Class's favor and against the Defendants, and award to Inman and the Plaintiff Class all available damages, including, but not limited to, full minimum wages for every hour worked, repayment of all illegally confiscated pooled tips, credit card and debit card paid tips, all liquidated damages, statutory damages, any and all equitable relief, plus payment of reasonable attorney's fees, costs and expenses, pre-judgment interest, and any and all other relief just and proper in the premises.

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691

By/s/ *Robert P. Kondras, Jr.*
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   Attorney for Plaintiff
   kondras@hkmlawfirm.com

By/s/ *Aaron J. Williamson*
   Aaron J. Williamson
   Benjamin C. Ellis
   hkm employment attorneys llp
   320 N. Meridian St., Ste. 615
   Indianapolis, IN 46204
   P/F (317) 824-9747
   Email: bellis@hkm.com
          awilliamson@hkm.com